Rothschild v. Hays.

---

## E. ROTHSCHILD AND BROTHERS v. ZEPH. HAYS AND WILLIAM WARD, *Assignee.*

### No. 411.* (59 Pac. 660.)

1. EVIDENCE — *Direct and Cross-examination.* It is not reversible error to allow a witness for the plaintiff who had in his direct examination testified that he had collected certain freight bills of the defendant to tell the amount he had so collected, on cross-examination.

2. ——— *Action for Fraud — Opinions of Third Parties.* In an action to recover goods claimed to have been procured by the fraud of the purchaser, it was not error to exclude from evidence letters written by the vendor to parties in the vicinity of the vendee inquiring about his financial standing and their letters in answer thereto giving their opinions thereon.

3. ——— *Demurrer.* The evidence in this case examined, and *held*, that the demurrer thereto was properly sustained.

Error from Doniphan district court; R. M. EMERY, judge. Opinion filed January 4, 1900. Affirmed.

---

*Petition for order to certify denied by supreme court March 5, 1900.—REP.

13—9 KAN. APP.

*Ryan, Davis & Reeder*, for plaintiff in error.

*Baker & Bell, K. B. Randolph*, and *B. A. Seaver*, for defendants in error.

The opinion of the court was delivered by

WELLS, J.: On August 18, 1894, the plaintiff, being a corporation engaged in the manufacturing and sale of clothing in Chicago, brought this action against the defendant Hays, as sheriff, to recover the possession of certain clothing, claimed to have been fraudulently purchased of it by John A. Dillon. Afterward William Ward, assignee of John A. Dillon, was made a party and filed an answer herein. The cause came duly on for trial, a jury was impaneled, and at the conclusion of the plaintiff's evidence a demurrer thereto was interposed by the defendants and sustained by the court; and thereupon the jury was discharged and judgment rendered for the defendants. From this judgment proceedings in error were brought to this court.

The first witness introduced by the plaintiff was Charles Wright, the railroad station agent at Severance, who testified that the goods in question were delivered to said Dillon on August 3 and 6, and that the freight thereon was collected by the drayman, and paid to him on August 4 and 6, respectively. On cross-examination, this witness was asked the amount of freight so collected, and this was objected to by the plaintiff as incompetent, irrelevant, and immaterial. The overruling of this objection is the first allegation of error. The goods were in the hands of the plaintiff through its writ of replevin, and the defendants claimed judgment for an increased value thereof on account of freight paid. There was no error in admitting this testimony.

Rothschild v. Hays.

The second, third, fifth, sixth, eighth and tenth assignments of error all relate to correspondence. between the plaintiff and certain third parties in relation to the financial condition of John A. Dillon, some two or three years before the sale in question. Without considering the distance in point of time from the date of the sale in question, these letters only gave the individual opinions of the writers and we do not think they were competent evidence. They were properly excluded.

The only other question we think necessary to consider is, Did the court err in sustaining the demurrer to the evidence?

The general contention of the plaintiff, summarized, is substantially this : Mr. Dillon, soon after the purchase of his partner's interest in the business, about February 1, 1891, started out to secure a fictitious rating and artificial credit in the commercial world, and with this end in view soon afterward gave reports to the commercial agencies of Bradstreet and Dunn, and to his banker at Severance, in which he very materially exaggerated the value of his assets, showing himself to be worth above liabilities from $14,300 to $19,000, when in fact he was only worth $4700 or less.   Upon the strength of the rating thus secured, plaintiff had extended him credit during the whole time he was in business by himself, down to June 11, 1894, when plaintiff's traveling man solicited and took the order for the goods in controversy, to be shipped on August 1, without notice of any material change in his financial condition, except of a loss of about $1000 by fire on January 1, 1893.   The goods were received by Dillon, a part on August 3 and the balance on August 6.   On August 8 he made a general assignment for the benefit of all his creditors.

We see nothing in the evidence to indicate that at the time the goods were bought Dillon did not intend to pay for them. The first intimation we have that the question of an assignment was being considered was on the day he received the last shipment of goods, when he was trying to sell the building, and he said if he could sell the building he thought he might pull through and it would n't be necessary to make an assignment.

Taking the evidence as a whole, it appears that, up to and including August 6, Mr. Dillon was endeavoring to save his business and avoid a failure, and only after his final effort on that day to dispose of the building had failed did he conclude to make an assignment.

"It has been repeatedly determined that the mere fact that a purchaser of goods on credit is insolvent, and knows himself to be so, and yet does not disclose that fact to the vendor, is not enough to render the sale fraudulent and voidable, if no questions are asked on that point, and no trick or fraud is resorted to to conceal the insolvency, and if there is no preconceived design not to pay for the goods." (Note to *Thurston v. Blanchard*, 33 Am. Dec. 707.)

We do not think there was evidence sufficient to justify a verdict for the plaintiff, and the demurrer to the evidence was properly sustained.

The judgment is affirmed.